IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DANNY LEVON MOBLEY, ) | |
| ) | No. 2:14-cv-02645-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Carolyn Colvin's (the "Commissioner") decision denying plaintiff's application for disability insurance benefits ("DIB"). The plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.    Procedural History

Plaintiff Danny Levon Mobley ("Mobley") filed an application for DIB on February 21, 2012, alleging disability beginning on August 26, 2010. The Social Security Agency denied Mobley's claim initially and on reconsideration. Mobley requested a hearing before an administrative law judge ("ALJ"), and ALJ Edward T. Morriss held a hearing on March 6, 2013. The ALJ issued a decision on March 29, 2013, finding that Mobley was not disabled under the Social Security Act. Mobley requested

1

Appeals Council review of the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On June 30, 2014, Mobley filed this action seeking review of the ALJ's decision. The magistrate judge issued the R&R on February 1, 2016, recommending that this court affirm the ALJ's decision. Mobley filed objections to the R&R on February 18, 2016, and the Commissioner filed a response on March 2, 2016. The matter is now ripe for the court's review.

### B.     Medical History

Because Mobley's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Mobley was born on August 16, 1962 and was 48 years old at the time of his alleged disability onset date. He communicates in English and has a limited education.

### D.     ALJ's Decision

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Mobley was disabled from August 26, 2010 through March 29, 2013. The ALJ first determined that Mobley did not engage in substantial gainful activity during the period at issue. Tr. 15. At the second step, the ALJ found that Mobley suffered from the following severe impairment: cervical and lumbar degenerative disc disease. Id. At step three, the ALJ determined that Mobley's impairments or combination of impairments did not meet or equal one of the listed impairments in the Agency's Listing of Impairments. Tr. 16; see 20 C.F.R. Part 404, Subpt. P, App'x 1. Before reaching the fourth step, the ALJ determined Mobley had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R.

§404.1567(b), with several limitations. Tr. 16–19. Specifically, the ALJ found that Mobley could only engage in light work with occasional climbing, stooping, kneeling, crouching, and crawling. Tr. 19. The ALJ found, at step four, that Mobley was not capable of performing past relevant work as a container crane operator. Id. Finally, at step five, the ALJ determined that, considering Mobley's age, education, work experience, and RFC, he could perform jobs existing in significant numbers in the national economy, and therefore concluded that he was not disabled during the period at issue. Tr. 20

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the

[Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

### III.   DISCUSSION

Mobley objects to the R&R on four grounds, arguing that the magistrate judge erred in: (1) holding that the ALJ's credibility findings were supported by substantial evidence; (2) holding that the ALJ appropriately considered the combined effects of his impairments; (3) discounting the opinion of Mobley's treating physician—Dr. William Richardson ("Dr. Richardson"); and (4) refusing to consider evidence submitted to the Appeals Council by Mobley's treating physician. The court considers each objection in turn.

####    A.   Credibility Determination

Mobley's first objection to the R&R is that the magistrate judge erred in finding that Mobley's subjective evaluations of pain were not consistent with the evidence in the record. Pl.'s Objection 2–6. Mobley contends that "once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, the ALJ ought to view any inconsistency or defect in the claimant's subjective testimony through a more discriminating lens." Id. at 5. Mobley also takes issue with the magistrate judge's interpretation of certain evidence in the record. Id. at 2–5.

Determining whether an individual is disabled by pain or other symptoms is a two-step process. First, an ALJ must determine whether a claimant has an underlying impairment that has been established by objective medical evidence that would

reasonably be expected to cause subjective complaints of the severity and persistence alleged. See 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96–7p; Craig, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." Craig, 76 F.3d at 594 (internal quotation omitted). Second, and only after the claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence. A claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p.

Mobley's first argument—that his subjective testimony must be given greater deference—misstates the effect of the threshold showing. While it is true that once a claimant has made the threshold showing of an underlying impairment that could reasonably be expected to cause the plaintiff's pain the plaintiff need not provide "objective evidence of the pain itself or its severity," this does not mean that a claimant's subjective evaluations are protected from other forms of evidence. See Craig, 76 F.3d at 594–96. In Craig v. Chater—the primary case on which Mobley relies—the Fourth Circuit confirmed that after the claimant makes this threshold showing, "the intensity and persistence of the claimant's pain, . . . must be evaluated." Id. at 595. The court gave no indication that a claimant's allegations of pain must be given greater deference at any

point; the threshold showing simply relieves the claimant from having to demonstrate "objective evidence of the pain itself . . . , such as inflamed tissues or spasming muscles." Id.  Such evidence is entirely distinguishable from other types of objective evidence, medical or otherwise, which remain "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work."  Id.  The Craig court explicitly stated that a claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence."  Id.

Here, the ALJ based its credibility determination on a number of factors, most significantly:  evidence from Mobley's medical examinations revealing that he was never in acute distress upon examination and giving no indication that he suffered any significant deficits, Mobley's failure to follow up on recommendations made by his treating physician, and evidence that Mobley was able to perform a significant range of daily activities.  Tr. 17–18.  These are appropriate forms of objective evidence that may be considered in evaluating a claimant's allegations of pain.  See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992), as amended (May 5, 1993) (allegations of pain not consistent with evidence where claimant failed to have pain reliever prescription filled, discontinued physical therapy sessions, failed to sustain a consistent medical regimen for treatment of back pain, and required no hospitalizations for back pain); Sanders v. Colvin, 2015 WL 471588, at *8 (M.D.N.C. Feb. 4, 2015) (finding "no reversible error in the ALJ's analysis" where ALJ determined that "[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" noting that "physical examinations generally showed that [plaintiff] was well developed, not in acute distress"); Wheeler v. Colvin, 2014 WL 2157458, at *14 (D.S.C. May 23, 2014) (finding

that the "ALJ provided concrete reasons for his credibility determination" where ALJ found claimant's alleged symptoms "not entirely credible," in part because of her "ability to perform a significant range of [activities of daily living]"). Therefore, the court finds that the ALJ conducted the appropriate analysis in making its credibility determination.

Beyond his challenge to the ALJ's general mode of inquiry, Mobley launches a series of attacks on the particular weight given to various forms of evidence in conducting that inquiry. Pl.'s Objections 2–5. Mobley notes that the magistrate judge found the ALJ's credibility findings were consistent with consultative examiner Dr. Harriet Steinert's ("Dr. Steinert") evaluation, and argues that Dr. Steinert's opinion is far less reliable than that of Dr. Richardson, who opined that Mobley suffers from "persistent pain." Id. at 2. Mobley also argues that the ALJ "relied far too heavily" on his decisions to forego certain recommendations made by his treating physician—namely that he undergo surgery to implant a spinal cord stimulator and/or take additional narcotic medications. Id. at 4–5. Finally, Mobley contends that the ALJ distorted the evidence of his daily activities, and that the magistrate judge improperly minimized those distortions. Id. at 3–4.

Mobley's objection is a straightforward challenge to the sufficiency of the evidence, and as such, the court must ask whether the ALJ's findings are supported by "substantial evidence." Hays, 907 F.2d at 1456. "In reviewing whether substantial evidence supports the findings of the ALJ, 'we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].'" Dunn v. Colvin, 607 F. App'x 264, 272 (4th Cir. 2015) (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). Instead, the court's duty is simply to

"scrutinize the record as a whole to determine whether the conclusions reached are rational." Id. at 266 (quoting Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)).

As to the ALJ's reliance on Dr. Steinert's evaluation to the exclusion of Dr. Richardson's opinion,[1] the court notes that the components of Dr. Steinert's opinion that formed the basis of the ALJ's credibility determination—namely the absence of acute distress and the absence of significant deficits in Mobley's physical abilities—are consistent with Dr. Richardson's observations. Numerous records from Dr. Richardson's evaluations indicate that Mobley was in "no acute distress" and that he had "5/5 strength."[2]  Tr. 271, 273, 274, 278. Mobley even acknowledges that he had "full grip strength and a normal walk on some evaluations." Pl.'s Objections 2. Though Dr. Richardson reached a different conclusion regarding Mobley's ability to work than Dr. Steinert, the ALJ's analysis looked past the conclusions themselves and analyzed the factual basis for each opinion, which provided a more consistent indication of Mobley's condition. Moreover, to the extent Dr. Steinert's and Dr. Richardson's opinions conflicted, it is notable that the Disability Determination Service's ("DDS") medical consultants also reviewed Mobley's medical records and arrived at a conclusion similar to Dr. Steinert's. Tr. 19. In light of such evidence, the court finds that the ALJ's decision to credit the medical record evidence indicating that Mobley was not in acute distress and suffered no significant deficits in his physical abilities was rational and supported by substantial evidence.

As to the ALJ's reliance on Mobley's refusal to receive recommended treatment, the magistrate judge correctly observed that "an unexplained inconsistency between the

---

[1] The court notes that this issue involves the weight given to Dr. Richardson's opinion, which is the subject of a separate objection and is discussed below.
[2] The references to strength were not always to the same form of strength.

claimant's characterization of the severity of h[is] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility." R&R at 6 (citing Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring)); see also Shrewsbury v. Astrue, 2010 WL 1380156, at *3 (S.D.W. Va. Mar. 31, 2010) ("An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility.").

Mobley takes issue with the magistrate judge's citation to 20 C.F.R. § 404.1530(a), which states that: "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." Mobley contends that because there was no guarantee that either the spinal cord stimulator or additional narcotic medications would restore Mobley's ability to work, they fail to qualify as required treatments under § 404.1530(a). Pl.'s Objections 5. This is a dubious interpretation of the word "can," especially given that paragraph (c) of the same section lists the "acceptable reasons for failure to follow prescribed treatment," none of which concern the likelihood that the treatment would work. 20 C.F.R. § 404.1530(c). It would be quite bizarre for a rule to make an inference available only in instances where there was no chance the treatment would fail. It's not clear how that would ever be determined, not to mention the fact that such circumstances would seem to be so exceedingly rare as to render the rule a nullity.

Moreover, because Mobley's recommended treatments were not technically "prescribed," the court finds SSR 96-7p somewhat more instructive on this issue. That ruling provides that:

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue

9

> regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain . . . failure to seek medical treatment.

<u>Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, SSR 96-7P (S.S.A. July 2, 1996).  Here, the ALJ plainly considered the fact that Mobley "was not interested in the [spinal cord stimulator] procedure," considering surgery to be a "future option," and "did not want to try any other narcotics due to possible side effects."  Tr. 18.  This is a fair reflection of the concerns Mobley expressed at the hearing, where he testified that certain doctors told him surgery should be a last resort and that medicines tend to make him sick.  Tr. 35–36.  Therefore, the court cannot find anything wrong with ALJ's treatment of Mobley's decision to decline the spinal cord stimulator procedure and further narcotic prescriptions.

Finally, Mobley argues that the ALJ distorted his capacity to perform daily activities by:  (i) stating that he could "prepare simple meals" when in fact he could only "make sandwiches and use the microwave," and (ii) stating that he could "paint his house" when in fact he painted a single window in his house, over the course of four hours and was unable to use a stepladder.  Pl.'s Objections 2–3.  In addressing this argument, the court first observes that these objections touch on only two of at least nine distinct activities the ALJ listed in finding that Mobley "retains the ability to perform a significant range of activities of daily living."  Tr. 17.  Thus, the ALJ could have reasonably determined that Mobley had the capacity to engage in a number of daily activities, even if it found that he could not engage in the specific activities at issue.

Moreover, if an ALJ cites multiple bases for a credibility finding, an error in one basis does not invalidate the finding altogether.  <u>Davis v. Colvin</u>, 2014 WL 172513, at *3 (D.S.C. Jan. 15, 2014) ("Because the ALJ did not rely solely on Plaintiff's failure to

10

obtain or follow through with treatment to discount Plaintiff's credibility, and the ALJ's credibility determination is supported by substantial evidence, the court finds that this error is harmless."). Thus, even if the entire daily activities discussion were invalidated by these objections, the ALJ's overall credibility finding would still stand given the other viable bases for that finding discussed above.

Therefore, the court finds that the ALJ's credibility determination was supported by substantial evidence, and Mobley's first objection fails.

### B.     Combined Effect of Impairments

Mobley next objects to the magistrate judge's dismissal of his argument that the ALJ should have specifically considered his spinal impairments in combination with his chronic pain syndrome. Pl.'s Objections 6. For the reasons discussed above, the ALJ did not find that Mobley has any such chronic pain syndrome—at least not to the extent Mobley asserts he does. To the extent Mobley simply means that the ALJ did not consider the pain he suffers in connection with his spinal impairments, the court finds that the ALJ did consider such pain as one of the "effects" of Mobley's spinal impairments. Tr. 16. No separate consideration is necessary, or even logical. Mobley's attempt to characterize a symptom of his spinal impairment as a distinct impairment fails.

Consequently, Mobley's second objection fails.

### C.     Treating Physician Opinion

Mobley next argues that the ALJ and the magistrate judge failed to give enough weight to the opinion of Dr. Richardson—Mobley's treating physician. Pl.'s Objections 7–8. Mobley contends that the ALJ improperly failed to explain why the opinions of Dr. Steinert were given greater weight than those of Dr. Richardson. Id. at 7. Mobley further

contends that in order to discount Dr. Richardson's opinion, the ALJ was required to consider each factor listed in 20 C.F.R. § 404.1527(c) and cite specific reasons why the opinion was inconsistent with the record as a whole.  Id.

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 590.  In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors:  (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion.  20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines, 453 F.3d at 563.  However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision."  Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C.

Sept. 1, 2010); see also § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion).  A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion."  Craft v. Apfel, 164 F.3d 624 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).  Thus, Mobley's contention that the ALJ was required to conduct a factor by factor analysis is meritless.

Nevertheless, the ALJ is obligated to explain his findings and conclusions on all material issues of fact, law, or discretion presented.  5 U.S.C. § 557(c)(3)(A) (2012).  "Strict adherence to this statutorily-imposed obligation is critical to the appellate review process," and courts have remanded cases where the reasoning for the ALJ's conclusion "is lacking and therefore presents inadequate information to accommodate a thorough review."  See v. Wash. Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994) (internal citation omitted).  "Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record."  Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

In February 2012, Dr. Richardson completed a Medical Source Statement in which he opined that Mobley could:  sit for only three hours, stand for only two hours, walk for only three hours, and work for only four hours in an eight hour work day.  Tr. 260.  Dr. Richardson further opined that:  Mobley could occasionally lift and carry up to

20 pounds; that Mobley was unable to bend, squat, crawl, climb, reach above, stoop, crouch or kneel; and that Mobley would need to be absent from work about twice a month. Tr. 261–62.

The ALJ gave "little weight" to Dr. Richardson's opinion, explaining that "Dr. Richardson's opinion is not consistent with the treatment records as discussed above." Tr. 19. The phrase "as discussed above" clearly references a lengthy discussion of the medical evidence produced by Mobley's treating physicians. Tr. 18. In summarizing the observations of Mobley's treating physicians, the ALJ found that:

> Although the claimant had an antalgic gait at times and some decreased neck and back range of motion, examinations consistently revealed that the claimant was in no acute distress and had normal (5/5) strength, intact sensation and no atrophy in the upper and lower extremities. The claimant routinely had 2+ deep tendon reflects and negative straight leg raise. While the claimant had slightly decreased (4/5) grip strength on a couple of occasions, he otherwise had normal (5/5) grip strength. The claimant consistently denied any bowel or bladder dysfunction and any lower extremity weakness.

Id. Such observations suggest that, contrary to Dr. Richardson's opinion, Mobley is capable of doing more than simply standing or sitting at various intervals.[3]

Thus, the ALJ focused on the extent to which Dr. Richardson's opinion was supported by relevant medical evidence and, to a lesser extent, the degree to which the opinion was consistent with the record as a whole. See 20 C.F.R. § 404.1527(c). These are undeniably valid considerations. Id. Given the numerous observations found in the treating physicians' evaluations suggesting Mobley's mobility and positional flexibility were only marginally impaired, the court finds that the ALJ had substantial evidence to

---

[3] The court notes that it has reviewed the underlying treatment records and finds the ALJ's summary to be a fair representation thereof.

support its conclusion that Dr. Richardson's opinion was inconsistent with the medical evidence and the record as a whole.

Mobley's third objection fails.

### 4. Evidence Submitted to Appeals Council

Mobley last argues that the magistrate court erred in finding that Dr. Richardson's letter to the Appeals Council was not "new or material" evidence warranting remand under 42 U.S.C. § 405(g).

If "dissatisfied" with an ALJ's decision, a claimant "may request that the Appeals Council review that action." 20 C.F.R. § 404.967. When a claimant requests review of an ALJ decision, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to [the ALJ]." Id. The regulations permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council. 20 C.F.R. §§ 404.968, 404.970(b). In such cases, the Appeals Council first determines if the submission constitutes "new and material" evidence that "relates to the period on or before the date of the [ALJ's] hearing decision." Id. § 404.970(b). Confronted with such new and material evidence, the Appeals Council then "evaluate[s] the entire record including the new and material evidence." Id. After this evaluation, if the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," id., it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. Id. §§ 404.967, 404.977(a), 404.979. But if upon consideration of all the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the

evidence, the Appeals Council can simply deny the request for review.  Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011).

In reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, "provides 'an adequate explanation of [the Commissioner's] decision.'"  Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)).  That is, a court should affirm the Commissioner's decision where it can conclude that it is supported by substantial evidence, and it should remand the case to the ALJ where, on consideration of the record as a whole, it cannot determine whether the ALJ's denial of benefits is supported by substantial evidence.  Id.

Here, Mobley submitted a letter from Dr. Richardson reiterating his initial conclusion that Mobley is unable to stand or sit for greater than a four hour period during an eight hour work day[4] and that Mobley has a maximum lifting capacity of approximately 20 pounds.[5]  Tr. 304–05.  Dr. Richardson goes on to provide an overview Mobley's medical condition that is consistent with the treatment records presented to the ALJ.  Compare id at 304 (noting "intact reflexes and strength," but "persistent pain radiating from a 4 to a 6"); with id. at 271, 273–86 (treatment records from Dr. Richardson and others generally indicating strength level as 4/5 or 5/5 and pain level as 4–6 on numeric scale).  Dr. Richardson then offers some explanation for his conclusion, stating that patients who have surgical intervention experience degenerative changes over a four to six year window.  Id. at 304.  Dr. Richardson further explains that the risk of this

---

[4]     The letter references an eight hour work "week," but the court presumes this is a scrivener's error.
[5]     The court notes that while Dr. Richardson states he is reaffirming his initial conclusion, the letter actually increases the time Mobley is considered capable of sitting or standing from three and two hours, respectively, to four hours in both cases.

degeneration is somewhat higher in Mobley's case, due to his physical condition, and notes that efforts to improve his physical condition or work through his discomfort would only exacerbate the problem.  Id. at 304–05.

The Appeals Council did not expressly determine whether it considered the letter to be "new and material," and simply found that the entire record—which included the letter—"does not provide a basis for changing the [ALJ]'s decision."  Tr. 2.  The magistrate judge found that the letter was neither "new" nor "material," because it did not add to the information already in the record—namely, Dr. Richardson's initial opinion, medical treatment records, consultative examinations, and state agency expert opinions.  R&R at 15.  Mobley now argues that Dr. Richardson's letter directly contradicts the ALJ's claim that his initial opinion was not supported by the treatment record by "explaining how he reached his opinion and linking it specifically to objective and subjective evidence contained in that very record."  Pl.'s Objection 8–9.

As Mobley seems to acknowledge, the only arguably "new" information in Dr. Richardson's letter concerns the reasoning underlying his initial assessment.  Id.  However, Mobley overstates the extent to which Dr. Richardson's letter "links" his opinion "specifically" to evidence in the record.  Most of Dr. Richardson's review of the record simply states, rather than explains, various observations contained in Mobley's treatment records.  Tr. at 304.  The fact that Dr. Richardson considered these observations in reaching his initial conclusion is not new; the Medical Source Statement clearly instructs medical providers to provide opinions "based on [their] examination."  Tr. 260.  Even the explanation of Mobley's degenerative changes cannot be considered "new," as

17

the ALJ already found that Mobley had severe impairments due to degenerative disc disease. Tr. 15.

One might argue that Dr. Richardson offered a new reason for reaching his conclusion by asserting that Mobley's condition could worsen if he is forced to engage in physical activity.[6] Tr. at 304–05. Assuming this component of the letter can be considered new and material, it does not disturb the conclusion that the ALJ's decision was supported by substantial evidence.

Mobley relies on Meyer to argue that remand is appropriate "where the 'other record evidence credited by the ALJ conflicts with the new evidence,'" because "a reviewing court 'simply cannot determine whether substantial evidence supports the ALJ's decision.'" Pl.'s Reply 7 (quoting Meyer, 662 F.3d at 707). However, the Meyer case addressed new evidence which provided the only indication of the treating physician's opinion and filled an "evidentiary gap" relied on by the ALJ in reaching its decision. Meyer, 662 F.3d at 707 (noting that "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record"). The court specifically recognized that where the evidence is more one-sided, additional analysis is unnecessary. Id. ("[T]he lack of [] additional fact finding does not render judicial review 'impossible'—as long as the record provides 'an adequate explanation of [the Commissioner's] decision.' Thus, we have affirmed an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council because we concluded that "substantial evidence support[ed] the ALJ's findings.'" (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983); Smith v. Chater, 99 F.3d 635, 638–39 (4th Cir. 1996))).

---

6   Mobley in no way highlights this argument.

Here, in contrast, the ALJ already assessed Dr. Richardson's opinion. Tr. 19. Even the arguably new assertion that Mobley risks further complications if he is "consistently trying to work through his discomfort or activity" is based—at least in part—on the assumption that Mobley is experiencing the sort of pain and limited mobility described in Dr. Richardson's initial opinion. Tr. 304–05. That opinion was properly discredited as inconsistent with the treatment records for the reasons described above. Thus, the letter adds very little to the mix of available evidence. Under such circumstances, remand is not appropriate.[7] Patterson v. Colvin, No. 4:14-CV-0041 DCN, 2015 WL 450477, at *16 (D.S.C. Feb. 3, 2015) (explaining that Meyer "does not require an automatic remand for unreviewed material evidence, but instead finds that remand is appropriate when the court cannot determine, from review of the record as a whole, if substantial evidence supports the denial of Plaintiff's application for benefits").

Mobley's fourth objection fails.

---

[7]  To the extent the R&R relies solely on its finding that the letter did not constitute "new and material" evidence, the court departs from that reasoning and finds that whether or not the letter was "new and material," the record as a whole demonstrates that the ALJ's decision was supported by substantial evidence.

## IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2016**
**Charleston, South Carolina**